UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES HELLARD,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF SAN RAFAEL, et al.,<br><br>    Defendants. | Case No. 22-cv-02001-JSW<br><br>**ORDER DENYING APPLICATION FOR TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. No. 3 |

This matter comes before the Court on consideration of the application for a temporary restraining order ("TRO") filed by Plaintiff James Hellard ("Mr. Hellard"). The Court has considered Mr. Hellard's application and opposition briefs filed by the City of San Rafael ("San Rafael") and the California Department of Transportation ("CalTrans").[1] Mr. Hellard did not file a reply by the deadline set by the Court. Having considered those papers, relevant legal authority, and the record in this case, the Court it DENIES Mr. Hellard's application.

**BACKGROUND**

On March 29, 2022, Mr. Hellard, acting *pro se*, filed a complaint in which he asserted claims against the City, CalTrans, Ms. Murphy, and Sergeant Huber, pursuant to 42 U.S.C. section 1983 for alleged violations of his rights under the Fourth, Fifth, and Eighth Amendments to the United States Constitution.[2] (Dkt. No. 1, Compl. at 3.) Mr. Hellard alleges the City stole his car

---

[1] Neither Lynn Murphy ("Ms. Murphy") nor San Rafael Police Sergeant Carl Huber ("Sergeant Huber") have appeared, but the Court's ruling is equally applicable to the claims against them.

[2] Mr. Hellard's application to proceed *in forma pauperis* was granted and the matter was reassigned to this Court. (Dkt. No. 6.) Accordingly, the Court is limited to considering the likelihood that Mr. Hellard will succeed on the merits of his claim.

"forcing [him] to be exposed to COVID … and into dangerous living on the streets." (*Id.* at 4.) Mr. Hellard also alleges he is being forced to live in a City-operated homeless encampment under Highway 101, which he claims has caused permanent hearing loss and respiratory illness. (*Id.* at 5; *see also* App. at 1; Declaration of James Hellard ("Hellard Decl."), ¶¶ 1, 3.) Mr. Hellard attests that he is forced to live in the encampment because "living anywhere else means my survival gear will be confiscated and I can be arrested at any time…" (Hellard Decl., ¶ 4.) Mr. Hellard also attests that the living conditions in the encampment are neither hygienic nor safe, and he asks the Court to enjoin the City "from forcing him to camp under the freeway underpass … and to allow [him] to escape to safely camp outside" the encampment. (Hellard Decl., ¶¶ 9-14; App. at 1.)

According to the City, the encampment at issue was set up as a temporary "Service Support Area" ("SSA") to provide services to unhoused individuals who had been living in encampments on park-and-ride lots owned by CalTrans. (*See, e.g.,* Murphy Decl., ¶¶ 5-6, 12-13; Dkt. 13-6, Declaration of Lindsey Lara ("Lara Decl.") ¶ 4, Ex. B at 3-4.) According to the record, CalTrans intends to clear out the encampment at issue in August 2022. (*Id.* ¶ 7.) Ms. Murphy and Sergeant Huber attest that none of the individuals living in the encampment, including Mr. Hellard and his ex-wife, were required to relocate there and can leave at any time. (Murphy Decl. ¶¶ 8-9, 17, 19; Huber Decl., ¶ 3.)

The City's regulations include a provision that provides:

> Nothing in this section shall be deemed to prohibit camping on all public property, including parks, when there is no alternative shelter available to the person camping; provided that the City Manager may nevertheless absolutely prohibit camping at any time in one or more specific parks where such prohibition is determined to be a threat to the public, health, safety, or welfare.

San Rafael Municipal Code § 19.20.080(C)(3).[3]

Sergeant Huber attests that "the San Rafael Police Department has not cited or arrested anyone for camping on public property within the San Rafael city limits," since the United States Court of Appeals for the Ninth Circuit issued its opinion in *Martin v. Boise*, 920 F.3d 584 (9th Cir.

---

[3] A copy of the regulation is attached as Exhibit E to the Lara declaration.

2019). (Huber Decl., ¶ 8.) The Department will, however, enforce City ordinances that preclude camping in open spaces and has cleared encampments from such spaces. The department also enforces ordinances prohibiting camping in one public park and City parking garages. (*Id.* ¶ 9; Lara Decl., Ex. D.) Sergeant Huber attests that there are no records that Mr. Hellard has been cited or arrested for camping on public property within City limits. (*Id.* ¶ 11.)

The Court will address additional facts as necessary.

## ANALYSIS

Preliminary injunctive relief, whether in the form of a TRO or a preliminary injunction, is an "extraordinary and drastic remedy" that is never awarded as of right. *Munaf v. Geren*, 553 U.S. 674, 689-690 (2008) (internal citations omitted). In order to obtain such relief, Plaintiff must establish: "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In *Alliance for the Wild Rockies v. Cottrell*, the Ninth Circuit held that the "serious questions" sliding scale approach survives *Winter*. 632 F.3d 1127, 1134-35 (9th Cir. 2011).

Thus, the Court may grant Mr. Hellard's application for a TRO if he demonstrates that there are serious questions going to the merits and a hardship balance that tips sharply in his favor, if the other two elements of the *Winter* test are also met. *Id.* at 1132. This allows the Court "to preserve the status quo where difficult legal questions require more deliberate investigation." *See Sencion v. Saxon Mortg. Servs.*, LLC, No. 10-cv-3108 JF, 2011 WL 1364007, *2 (N.D. Cal. April 11, 2011).

The Court concludes Mr. Hellard has not demonstrated it is likely that he will suffer irreparable harm if the Court fails to grant a TRO. First, the record shows that none of the Defendants are requiring him to live in the encampment. Second, he has not demonstrated that the City is likely to arrest him if he chooses to camp elsewhere or that he has been arrested for doing so. The Court also concludes that Mr. Hellard has not met his burden to show he is likely to succeed on the merits or that there is a serious question on the merits and that the balance of hardships tip sharply in his favor. As CalTrans argues, there are no facts to show how it has

purportedly caused him harm. With respect to the alleged violations of his Eighth Amendment rights, as set forth above, the City's anti-camping ordinance exempts unsheltered individuals and there is no indication Mr. Hellard has been or is likely to be arrested for violating the ordinance.

Mr. Hellard also alleges the Defendants violated his Due Process rights, relying on the state-created danger doctrine. "The Due Process Clause is a limitation on state action and is not a guarantee of certain minimal levels of safety and security. … Simply failing to prevent acts of a private party is insufficient to establish liability." *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019) (internal quotations and citations omitted). In general, "a state is not liable for its omissions." *Id.* However, an exception exists if a state "affirmatively places [an individual] in danger by acting with deliberate indifference to a known or obvious danger." *Id.* (internal quotations and citations omitted). Based on the existing record, including Mr. Hellard's statement that he was living under the freeway before the SSA was created, the Court concludes he has not met his burden to show that any of the Defendants created or exposed him to a danger that he would not otherwise have faced. *Id.* at 1271-72.[4]

Accordingly, the Court DENIES Mr. Hellard's application for a TRO.

**IT IS SO ORDERED**.

Dated: April 19, 2022

_____
JEFFREY S. WHITE
United States District Judge

---

[4] Because the Court concludes Mr. Hellard fails to meet his burden on the first two *Winter* factors, it does not reach the remaining factors. *See California v. Azar,* 950 F.3d 1067, 1083 (9th Cir. 2020) (en banc) ("If a movant fails to establish likelihood of success on the merits, we need not consider the other factors.").